Filed February 1, 1893.

---

### No. 678.

### LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY *v.* STEELE.

AMENDMENT OF PLEADING.—*Complaint.*—*Judgment.*—*Presumption.*—Where a complaint could have been amended in the trial court so as to be in conformity with the judgment, such amendment, on appeal, will be presumed to have been made.

APPEAL.—*Amount in Controversy.*—*Jurisdiction.*—*Recovery.*—*Amount Demanded.*—Where the plaintiff below recovers and is satisfied with the amount of his recovery, and the defendant appeals, the amount in controversy is not what is sued for, but what is recovered.

DEMURRER TO EVIDENCE.—*Railroad.*—*Freight.*—*Contract to Carry.*—*Notice of Loss.*—*Sufficiency of.*—*Evidence.*—*Sufficiency to Withstand Demurrer.*—A. brought suit to recover damages for a breach of a contract of shipment, the contract being for the delivery of a car load of poultry at "team track," Chicago. The car, when it arrived at 51st street, Chicago, was delayed at that point about nine hours, and in consequence thereof his poultry greatly shrank in weight before he could get them on market. The contract of shipment provided, as a condition precedent to the shipper's right to recover for any damage for loss or injury to said property, that notice be given in writing of his claim to some officer of the company or its nearest station agent, before the stock is removed from the place of

delivery or is mingled with other stock. The only testimony concerning notice of loss was by the shipper, which was to the effect that he notified the carrier by letter, about two weeks after the loss, as soon as he had ascertained the amount thereof. The defendant demurred to the evidence, relying upon the want of evidence in regard to notice, and the demurrer was overruled.

*Quære,* was the notice, as shown by the evidence, sufficient?

*Held,* that the evidence was sufficient to withstand a demurrer, and that the notice, under the circumstances, was a sufficient compliance with the contract of shipment.

*Held,* also, that it was the duty of the court, under the demurrer to the evidence, to determine whether there was any evidence from which the jury might have lawfully inferred a reasonable compliance with the condition requiring notice.

From the Monroe Circuit Court.

*E. C. Field* and *W. S. Kinnan,* for appellant.

*J. R. East* and *J. E. Edmonson,* for appellee.

REINHARD, C. J.—This cause originated before the mayor of the city of Bloomington, where the appellee recovered $49.35, which was the exact amount sued for in his complaint. The appellant appealed to the Circuit Court, where the cause was tried *de novo,* and the appellee, without having amended his complaint, recovered $51.

The first question we are to decide is that raised by the appellee's motion to dismiss the appeal for want of jurisdiction.

The statute allows an appeal only in such cases when the amount in controversy, exclusive of interest and costs, exceeds $50. Section 632, R. S. 1881. There was no interest recovered. The question is, what is the real amount in controversy? The appellee, in strictness, could not, without amending his complaint, have recovered more than $49.35, but he could have obtained leave to amend even after the finding, and in such cases this court will deem the amendment as having been made, and the appeal will be treated as if it had been made. Sections 392, 393, 398, 658, R. S. 1881; *Krutz* v. *Howard,* 70 Ind. 174; *Leib* v.

*Butterick*, 68 Ind. 199; *Buchanan, Admr.*, v. *State, ex rel.,* 106 Ind. 251; *Sandford Tool, etc., Co.* v. *Mullen*, 1 Ind. App. 204.

To all intents and purposes, therefore, the case stands here as if the complaint demanded judgment for $51, and will be so regarded. If the appellee did not claim more than $49.35, as his counsel now assert, he should have entered a remittitur for the overplus. He can not retain the attitude in which the judgment places him and at the same time deny his adversary the rights which he thereby acquires. This court can be guided in such matters only by the record, and we do not find where the appellee remitted or disclaimed any portion of the $51.

It is well settled that where the plaintiff below recovers and is satisfied with the amount of his recovery, and the defendant appeals, the amount in controversy is not what is sued for, but what is recovered. *Ex Parte Sweeney*, 126 Ind. 583; *Sprinkle* v. *Toney*, 73 Ind. 592; *Jeffersonville, etc., R. R. Co.* v. *Harrold*, 3 Ind. App. 592.

The motion to dismiss the appeal must be overruled.

The overruling of the appellant's demurrer to the evidence is the only error assigned and discussed. The action was for a breach of a written contract of shipment of a carload of poultry from Ellettsville, Indiana, to Chicago, Illinois, in failing to deliver the same in time, as required by the contract, thereby causing a shrinkage in weight.

The contract provides, among other things, that the appellee, as a condition precedent to his right to recover any damage for loss or injury to said property, will give notice in writing of his claim thereof to some officer of the company, or its nearest station agent, before the stock is removed from the place of delivery of the same and before it is mingled with other stock. The complaint avers that this condition had been complied with. The appellant insists that there is no evidence whatever to sustain this allegation, and that the court therefore erred in overruling

the demurrer. This is the only point made against the sufficiency of the evidence, and the only one that remains for us to determine. There was no evidence other than that given by the appellee himself. He testified, that the only notice which he gave to the appellant was contained in a letter written by him about two weeks after the loss. He also testified that he accompanied the poultry to Chicago on the freight train, which started from Ellettsville at 12 o'clock noon on one day and arrived at 51st street, in Chicago, the next morning about 7 or 8 o'clock. The point of delivery was some three miles beyond there, at a place designated as the "team track"; that the train was due at the point of destination about 7 or 8 o'clock in the morning, but by reason of delay at the freight yard, at 51st street, it did not arrive at the "team track," where the stock was unloaded, until near 4 o'clock in the afternoon; that he watered and fed the poultry at 51st street in the morning, but not afterwards, his supply of feed having been exhausted; that he first ascertained the weight of the stock the next day after reaching Chicago, when he sold it, he himself seeing it weighed; that he did not know what the loss was until he returned home and cast up the weights he had kept upon shipment and deducted therefrom the weights upon sale, and that when he had so ascertained the loss he notified the company.

Assuming that the contract is an enforcible and binding one, under proper conditions, does this evidence tend to prove a reasonable compliance with the same? We are of the opinion that it does.

When the appellee had reached the point of delivery with his stock, he had not ascertained the loss. He could not have demanded a settlement or given notice of his claim before he ascertained what such loss or claim was. There was nothing to show that he had knowledge of the loss until he came to sell the poultry, which was the next day after its arrival at the point of destination. Whether

the property had been removed or was still on the cars or in the custody of the appellant does not appear.   Nor is there any evidence of the presence of any agent or employe of the appellant at or near the place where appellee discovered his loss at the time of such discovery.   Under these circumstances, even if we assume that the property was still unremoved from the place of delivery when the appellee became apprised of the shrinkage, what was he to do ?   Was he to abandon his poultry for the time being and go in search of an agent or employe upon whom he might serve notice, or wait until he had fully ascertained the extent of his damage and then notify the appellant? If the former, what notice was he to give the appellant? The contract requires that the appellee give notice *of his claim.*   How could he do this until he knew what the claim was ?   A contract such as this, though valid when applied to one class of circumstances, may be invalid when applied to others.   The burden of proving the reasonableness of such a condition rests upon the appellant.  *Lewis* v. *Great Western R. W. Co.,* 47 L. J. Q. B. 131, L. R. 3 Q. B. Div. 195.   The rule is not changed in this country.   2 Am. and Eng. Ency. of Law, 818, and notes.

Had the loss been such as to be apparent at the time of delivery or before, and the extent thereof could have been ascertained before removal, as where an injury occurs by accident, etc., a different question might arise.   In that case the condition, if founded upon proper consideration, would compel the appellee by the notice to afford the carrier an opportunity for ascertaining for itself the nature and extent of the loss before the avenues of investigation were closed by a removal of the property and mingling it with other of a like character.

We have examined the cases cited by appellant's counsel, and, while they uphold the general doctrine that such contracts will be sustained when the circumstances are proper, the facts upon which the decisions are based are

essentially different from those in the present case. There it appeared fully enough that the owners of the property had knowledge of the loss in time to give the notice as insisted upon, and either failed entirely to give notice or transmitted it in such a manner as that it did not reach the carrier or its proper agent. *Sprague* v. *Missouri Pac. R. R. Co.* (Kan.), 23 Am. and Eng. R. R. Cas. 684; *Texas Cent. R. W. Co.* v. *Morris* (Texas), 16 Am. and Eng. R. R. Cas. 259.

We think, under the circumstances, it would have been proper to submit the question as to whether the contract had been reasonably complied with to the determination of the jury under the instructions of the court. The demurrer to the evidence removed the cause from the jury, and transferred it to the court. It became the duty of the court to decide whether there was any evidence at all from which the jury might have lawfully inferred a reasonable compliance with, or performance of, the condition.

We have come to the conclusion that the court did not err in overruling the demurrer.

Judgment affirmed.

Filed February 2, 1893.